No. 04-70C
(Judge Baskir)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

PPL SUSQUEHANNA, LLC,

Plaintiff,

v.

UNITED STATES,

Defendant.

# DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT UPON COUNTS I AND II OF PLAINTIFF'S COMPLAINT, AND DEFENDANT'S MOTION TO DISMISS COUNT III OF PLAINTIFF'S COMPLAINT

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

HAROLD D. LESTER, JR.
Assistant Director

SONIA M. ORFIELD
Trial Attorney
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
1100 L Street, N.W.
ATTN: Classification Unit, 8th Floor
Washington, D.C. 20530
Tel: 202-353-0534
Fax: 202-514-8624

OF COUNSEL:

JANE K. TAYLOR
Office of General Counsel
U.S. Department of Energy
1000 Independence Ave., S.W.
Washington, D.C. 20585

April 11, 2007

# TABLE OF CONTENTS

PAGE(S)

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT UPON COUNTS I AND II OF PLAINTIFF'S COMPLAINT AND MOTION TO DISMISS COUNT III OF PLAINTIFF'S COMPLAINT . . . . . . 1

DISCUSSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I. IN RESPONSE TO THE GOVERNMENT'S CROSS-MOTION, PPL DID NOT PRESENT ANY EVIDENCE OF DAMAGE TO PRECLUDE SUMMARY JUDGMENT IN THE GOVERNMENT'S FAVOR UPON LIABILITY FOR BREACH OF CONTRACT . . . . . . . . . . . . . . 2

A. Incorrectly Assuming That "Breach" And "Liability" Are Synonymous Terms, PPL Has Failed To Present Any Evidence Of Damage Resulting From DOE's Delay In Beginning Spent Nuclear Fuel Acceptance From Other Contract Holders . . . . . . . . . . . . . . . . . . . . 2

B. PPLCannot Recover Damages That It Currently Anticipates Incurring In The Future . . . . . . . . . . . . . . . . 7

C. Even If PPL Had Established Some Damage Under Its Theory Of DOE's Obligations, Its Theory Of DOE's Obligations Is Incorrect . . . . . . . . . . . . . . . . . . . . 9

D. PPL's Explanations About The Reasons It Never Submitted A Delivery Commitment Schedule Are Unsupported . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

II. PPL HAS FAILED TO PROFFER THE SUBSTANTIAL EVIDENCE NECESSARY TO SUPPORT ITS GOOD FAITH AND FAIR DEALING CLAIM, MANDATING DISMISSAL OF THAT CLAIM . . . 18

III. PPL HAS FAILED TO DISTINGUISH ITS TAKINGS CLAIM FROM ITS BREACH OF CONTRACT CLAIM, AND THE TAKINGS CLAIM SHOULD, THEREFORE, BE DISMISSED . . . 25

A. PPL's Complaint About Its Real Property Is Merely A Redescription Of Its Complaint About DOE's Failure To Satisfy Its Obligations Under The Standard Contract . . . 25

B. Given That PPL Still Controls And Has Sole Possession Of Its Real Property, The Government Has Not "Taken" PPL's Property Rights In Its Real Property . . . 28

C. PPL's Assertion That The Federal Circuit Has Already Permitted Spent Nuclear Fuel Plaintiffs To Pursue Contract And Takings Claims Concurrently Is Unfounded And Misleading . . . 31

D. The Cases That PPL Cites To Support Its Ability To Recover Under Both Contract And Takings Theories Do Not Support Its Argument . . . 38

IV. DEFENDANT'S REQUEST FOR LIMITED DISCOVERY ON LIABILITY ISSUES IS APPROPRIATE UNDER THESE CIRCUMSTANCES . . . 43

CONCLUSION . . . 46

# TABLE OF AUTHORITIES

## CASES

PAGE(S)

A&S Council Oil Co. v. Lader,
56 F.3d 234 (D.C. Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

Allegre Villa v. United States,
60 Fed. Cl. 11 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42, 43

Aleutian Constructors v. United States,
24 Cl. Ct. 372 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Am-Pro Protective Agency, Inc. v. United States,
281 F.3d 1234 (Fed. Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . 19, 20, 24

Anderson v. Liberty Lobby,
477 U.S. 242 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

Applied Cos. v. United States,
144 F.3d 1470 (Fed. Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Asco-Falcon II Shipping Co. v. United States,
32 Fed. Cl. 595 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Avenal v. United States,
33 Fed. Cl. 778 (1995), aff'd, 100 F.3d 933 (Fed. Cir. 1996) . . . . . . 7

Bailey v. United States,
53 Fed. Cl. 251 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26, 37

Barmag Barmer Maschinenfabrik AG v. Murata Machinery, Ltd.,
731 F.2d 831 (Fed. Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 20

Branch v. United States,
69 F.3d 1571 (Fed. Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

Canal Elec. Co. v. United States,
65 Fed. Cl. 650, 656 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . .33

Castle v. United States,
301 F.3d at 1342 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26, 28, 37

Castle v. United States,
48 Fed. Cl. 187 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25, 38

Commonwealth Edison Co. v. United States,
56 Fed. Cl. 652 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 33

Comptroller General Warren to the Secretary of War,
B-28964, 22 Comp. Gen. 291 (1942) . . . . . . . . . . . . . . . . . . . . . . 22

Cotton v. United States,
29 Ct. Cl. 207 (1894) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Cosmo Constr. Co. v. United States,
196 Ct. C 451 F.2d 602 (1971) . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Coughlin v. Blair,
41 Cal. 2d 587, 262 P.2d 305 (1953) . . . . . . . . . . . . . . . . . . . . . . 9

Detroit Edison Company v. United States,
56 Fed. Cl. 299 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

FDIC v. United States,
342 F.3d 1313 (Fed. Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . 25

Fern v. United States,
908 F.2d 955 (Fed. Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . 34

Florida Power & Light Co. v. United States,
64 Fed. Cl. 37 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Franconia Assocs. v. United States,
61 Fed. Cl. 718 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

Franklin Sav. Corp. v. United States,
56 Fed. Cl. 720 (2003),
aff'd, 97 Fed. Appx. 331 (Fed. Cir. 2004) . . . . . . . . . . . . . . . . . . . . . 19

Government Sys. Advisors, Inc. v. United States,
21 Cl. Ct. 400, 441
vacated on other grounds, 25 Cl. Ct. 554 (1990) . . . . . . . . . . . . . . . 16

Granite Mgt. Corp. v. United States,
55 Fed. Cl. 164 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26, 35

Gregory Lumber Co. v. United States,
9 Cl. Ct. 503, 532 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

Hoch v. United States,
31 Fed. Cl. 111 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Home Sav. of Am., F.S.B. v. United States,
51 Fed. Cl. 487 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25, 26, 35

Honeywell, Inc. v. United States,
228 Ct. C 661 F.2d 182 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

Imperial Tobacco Ltd. v. Philip Morris, Inc.,
899 F.2d 1575 (Fed. Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Indiana Michigan Power Co. v. Department of Energy,
88 F.3d 1272 (D.C. Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Indiana Michigan Power Company v. United States,
422 F.3d 1369 (Fed. Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

Integrated Logistics Support Systems Int'l, Inc. v. United States,
42 Fed. Cl. 30 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38, 41, 42

LaVan v. United States,
382 F.3d 1340 (Fed. Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Levi Strauss & Co. v. Genesco, Inc.,
742 F.2d 1401 (Fed. Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . 5, 7, 21

Ling-Temco-Vought, Inc. v. United States,
201 Ct. C 475 F.2d 630 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Lockheed Martin Corp. v. United States,
50 Fed. Cl. 550 (2001), aff'd,
48 Fed. Appx. 752 (Fed. Cir.2002) . . . . . . . . . . . . . . . . . . . . . . . . 26

Lucas v. South Carolina Coastal Council,
505 U.S. 1003 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

Maine Yankee Atomic Power Co. v. United States,
225 F.3d 1336 (Fed. Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . 31, 32

Members of the Peanut Quota Holders Ass'n, Inc. v. United States,
60 Fed. Cl. 524 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

Munn v. Illinois,
94 U.S. 113 (1876) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

National By-Products, Inc. v. United States,
186 Ct. C 405 F.2d 1256 (1969) . . . . . . . . . . . . . . . . . . . . . . . . . 15

National Life Insurance Co. v. Solomon,
529 F.2d 59 (2d Cir. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

Northern Helex Co. v. United States,
197 Ct. C 455 F.2d 546 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Opryland USA, Inc. v. The Great Am. Music Show, Inc.,
970 F.2d 847 (Fed. Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . 45

Pacific Gas & Electric v. United States
70 Fed. Cl. 766 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8, 32

Pacific Gas & Electric Co. v. United States,
73 Fed. Cl. 333 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 12

Pennsylvania Coal Co. v. Mahon,
260 U.S. 393 (1922) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

Pittman v. Chicago Bd. of Educ.,
64 F.3d 1098 (7th Cir. 1995),
cert. denied, 517 U.S. 1243 (1996) . . . . . . . . . . . . . . . . . . . . . . . . 34

Prudential Insurance Co. of America v. United States,
801 F.2d 1295 (Fed. Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . 36, 37

Puritan Assocs. v. United States,
215 Ct. Cl. 976, 978 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Rollins v. United States,
23 Ct. Cl. 106, 123 (1888) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Sacramento Municipal Utility District v. United States,
61 Fed. Cl. 438 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

Solar Turbines, Inc. v. United States,
23 Cl. Ct. 142 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Southern Nuclear Operating Co. v. United States,
No. 98-614C (Fed. Cl. Apr. 7, 2004) . . . . . . . . . . . . . . . . . . . . 32, 35

Sun Oil Co. v. United States,
215 Ct. Cl. 716, 572 F.2d 786, 818 (1978) . . . . . . . . . . . . . . . . . . 25

System Fuels Inc. v. United States,
66 Fed. Cl. 722 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Tennessee Valley Authority v. United States,

60 Fed. Cl. 665 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Westfed Holdings, Inc. v. United States,
52 Fed. Cl. 135 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26, 35

Yankee Atomic Electric Co. v. United States,
No. 98-126C (Fed. Cl. June 26, 2003) . . . . . . . . . . . . . . . . . . . . . . 33

STATUTES, RULES AND REGULATIONS

10 C.F.R. § 961.11, Art. II . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

64 Fed. Reg. 18451 (Apr. 14, 1999) . . . . . . . . . . . . . . . . . . . . . . . . . 29

48 Fed. Reg. 16590, 16591 (Apr. 18, 1983) . . . . . . . . . . . . . . . . . . . . . 13

42 U.S.C. §§ 2041b-2041i . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

Rule 56(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44, 45

MISCELLANEOUS

Arthur L. Corbin, Corbin on Contracts § 956 (Interim ed. 1993) . . . . . . . . 9

L. Fuller, The Morality of Law 60 (1964) . . . . . . . . . . . . . . . . . . . . . . . 34

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| PPL SUSQUEHANNA, LLC, Plaintiff, | |
| v. | No. 04-70C (Judge Baskir) |
| THE UNITED STATES, Defendant. | |

DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT UPON COUNTS I AND II OF PLAINTIFF'S COMPLAINT AND MOTION TO DISMISS COUNT III OF PLAINTIFF'S COMPLAINT

Defendant, the United States, respectfully submits this reply to "Plaintiff's Reply in Support of Its Motion For Summary Judgment of Liability and Response In Opposition To Defendant's Motion For Summary Judgment on Counts I and II of Plaintiff's Complaint and Defendant's Motion to Dismiss Count III of Plaintiff's Complaint."

## DISCUSSION

### I. IN RESPONSE TO THE GOVERNMENT'S CROSS-MOTION, PPL DID NOT PRESENT ANY EVIDENCE OF DAMAGE TO PRECLUDE SUMMARY JUDGMENT IN THE GOVERNMENT'S FAVOR UPON LIABILITY FOR BREACH OF CONTRACT

#### A. Incorrectly Assuming That "Breach" And "Liability" Are Synonymous Terms, PPL Has Failed To Present Any Evidence Of Damage Resulting From DOE's Delay In Beginning Spent Nuclear Fuel Acceptance From Other Contract Holders

In its response to our cross-motion for summary judgment, plaintiff, PPL Susquehanna, LLC ("PPL"), begrudgingly acknowledges that, under the Standard Contract at issue in this case, the Department of Energy ("DOE") was not obligated to begin accepting PPL's spent nuclear fuel ("SNF") by January 31, 1998. Pl. Reply 15 (stating that, "[h]ad DOE used the appropriate [acceptance] rate, PPL, in fact, would have had its first deliveries accepted by DOE no later than 2004 (in the sixth year of the waste management system's operation)").[1] As we established in our

[1] "Pl. Reply __" refers to plaintiff's reply in support of its motion for summary judgment upon liability and response to defendant's cross-motion for summary judgment upon Counts I and II of plaintiff's complaint and upon Count III of that complaint, dated March 21, 2007. "Pl. Reply App. __" refers to the appendix to that brief. "Def. Br. __" refers to defendant's corrected response to plaintiff's motion for summary judgment upon liability and cross-motion for summary judgment upon Counts I and II and to

cross-motion, the "oldest fuel first" allocation method for SNF acceptance from the various contract holders precluded PPL from obtaining any SNF acceptance rights at the beginning of the SNF acceptance queue, both because of the number of contract holders that had allocations ahead of PPL and because of PPL's failure to submit any delivery commitment schedules ("DCSs") seeking a commitment to accept PPL's SNF on a particular date. Def. Br. 36-44. Nevertheless, PPL devotes the majority of its response to our summary judgment motion upon Count I of its complaint discussing the existence of a breach of contract on January 31, 1998. Pl. Reply 6-12, 18-28.

PPL has missed the point of our cross-motion. PPL seeks a dispositive decision here not only upon breach, but upon liability. Yet, as we established in our cross-motion, the existence of a breach is but one component of liability. Def. Br. 31-33. The Court of Claims has recognized that, before a contractor is entitled to judgment regarding entitlement, it must establish as part of its proof that it suffered some damage, beyond mere speculation, because of the Government's actions. Puritan Assocs.

dismiss Count III of plaintiff's complaint. "Def. App. __" refers to the corrected appendix to that brief. "Def. Reply App. __" refers to the appendix to this brief.

v. United States, 215 Ct. Cl. 976, 978 (1977). When considering a summary judgment motion regarding liability, "evidence on damages or quantum is not totally excluded because there must be some evidence of damage to support a finding on liability" that is "sufficient to demonstrate that the issue of liability is not purely academic." Cosmo Constr. Co. v. United States, 196 Ct. Cl. 463, 469-70, 451 F.2d 602, 605-06 (1971).

In our cross-motion, we established the absence of any evidence that PPL could have been injured by DOE's failure to begin accepting SNF from other contract holders on January 31, 1998, given that, under any scenario, PPL could not have had any rights to the acceptance of its SNF for many years after 1998. Even under PPL's best argument – that DOE should have been obligated to begin accepting its SNF in 2004, Pl. Reply 15 – DOE had no obligation to begin accepting PPL's SNF before PPL filed its complaint in this case. Plaintiff filed its complaint in January 2004, and, assuming that PPL should have had acceptance allocations in 2004, DOE could have accepted PPL's SNF anytime between January 31, 2004, and January 30, 2005. Pl. Reply App. 112. In all of its briefing, PPL has failed to present sufficient evidence to support its proposition that it has incurred any damages from DOE's delay in beginning SNF acceptance from other

contract holders on January 31, 1998.[2]

Although it purports to rely upon the Declaration of Andrew Dyszel ("Dyszel Decl.") appended to plaintiff's opening brief to make such a showing, that declaration fails to meet the mark. Indeed, if anything, that declaration completely undercuts plaintiff's case. In his declaration, Mr. Dyszel states that, "[a]t or about [1995,] PPL conducted studies and determined that the amount of spent fuel in the pool, plus a reasonable reserve capacity needed to offload each reactor core, would exceed the physical capacity of the spent fuel pool in 2000," and thus decided to construct dry storage. Dyszel Decl. at ¶ 6. This statement actually demonstrates that, even under PPL's best case scenario, it would have needed to construct a dry storage facility to address the four-year gap between its need for additional storage and DOE's arrival. Thus, while

---

[2] PPL maintains that its incurred costs include "amounts for the design, licensing, and construction of a dry spent fuel storage facility (including the purchase of dry storage casks), at the Susquehanna nuclear power plant, to allow the plant to accommodate spent nuclear fuel assemblies DOE would otherwise pick up." Pl. Reply 17. Because counsel's representations in PPL's brief cannot constitute evidence, see Levi Strauss & Co. v. Genesco, Inc., 742 F.2d 1401, 1404 (Fed. Cir. 1984), PPL has provided absolutely no evidence to support these assertions or to establish that they are anything but vague predictions of some future activity in which PPL may engage.

PPL could theoretically incur some damages after DOE was supposed to start accepting its fuel, the initial cost of constructing the ISFSI through the time of the complaint was not caused by DOE's delay.

Plaintiff also contends that, even assuming the Government's view that it would not have accepted fuel from plaintiff until sometime after 2008, plaintiff had still been damaged by the time its complaint was filed because of "predictable cascading delays" and the "domino effect" of DOE's delay in beginning acceptance by January 31, 1998. Pl. Reply 16-17. Essentially, plaintiff contends that DOE's delay in accepting other utilities' fuel affected "DOE's ability to timely accept delivery of SNF" in the future. Pl. Reply 16. While PPL suggests that this action led to a need for mitigation, Pl. Reply 17, this argument, too, is undercut by PPL's declaration indicating that it would have needed to build an ISFSI prior to any DOE acceptance of PPL's SNF in a non-breach world.

To refute the Government's summary judgment motion, PPL was required to provide, at a minimum, evidence through declaration detailing facts establishing that it suffered some damage from DOE's failure to beginning SNF acceptance from other contract holders by January 31, 1998. <u>See</u> <u>Barmag Barmer Maschinenfabrik AG v. Murata Machinery, Ltd.</u>,

731 F.2d 831, 836 (Fed. Cir. 1984). Further, "it is well settled that 'a conclusory statement on the ultimate issue does not create a genuine issue of fact.'" Applied Cos. v. United States, 144 F.3d 1470, 1475 (Fed. Cir. 1998) (emphasis in original) (quoting Imperial Tobacco Ltd. v. Philip Morris, Inc., 899 F.2d 1575, 1581 (Fed. Cir. 1990)). "Argument and assertion of counsel cannot substitute for factual statements under oath that establish a genuine material issue of fact." Levi Strauss & Co. v. Genesco, Inc., 742 F.2d 1401, 1404 (Fed. Cir. 1984).[3] The absence of any evidence, other than counsel for PPL's self-serving statements of alleged injury, is insufficient to create a genuine issue as to whether PPL has suffered any injury here or to preclude summary judgment in the Government's favor upon liability.

### B. PPL Cannot Recover Damages That It Currently Anticipates Incurring In The Future

Given the lack of evidence of present damages, it appears that the only manner in which PPL could recover damages now is by reference to

---

[3] See Avenal v. United States, 33 Fed. Cl. 778, 784 (1995) ("assertions of counsel cannot substitute for factual statements under oath that establish a genuine issue of material fact"), aff'd, 100 F.3d 933 (Fed. Cir. 1996); Hoch v. United States, 31 Fed. Cl. 111, 114 (1994) (counsel's assertions regarding fact at issue are insufficient to preclude summary judgment).

damages that, when it filed its complaint, it anticipated incurring in the future if DOE did not timely accept its SNF. Such damages, however, are not available here. Indiana Michigan Power Company v. United States, 422 F.3d 1369, 1376 (Fed. Cir. 2005). In this case, PPL is claiming a partial, not a total, breach of contract. Because its claim is for partial breach, PPL may not obtain future damages. "'[C]ontract law precludes recovery for speculative damages.'" Id. at 1376 (quoting San Carlos Irrigation & Drainage Dist. v. United States, 111 F.3d 1557, 1563 (Fed. Cir. 1997). Thus, the Federal Circuit has held that, "because of its highly speculative nature, a claimant may not recover, at the time of the first suit for partial breach, prospective damages for anticipated future nonperformance resulting from the same partial breach." Id. 1376 (citation omitted); see also Pacific Gas & Electric v. United States 70 Fed. Cl. 766, 779, 760 (2006) ("the Federal Circuit . . . concur[red] in the proposition that 'if the breach of an entire contract is only partial, the plaintiff can recover only such damages as he or she has sustained, leaving prospective damages to a later suit in the event of further breaches."). Rather, "where there has been no repudiation [e.g. no total breach], the plaintiff can recover damages from his injury only to the date of the writ. . . ." Indiana

Michigan, 422 F.3d at 1376 (quoting 9 Arthur L. Corbin, Corbin on Contracts § 956 (Interim ed. 1993)); see also Coughlin v. Blair, 41 Cal. 2d 587, 8989, 262 P.2d 305, 311 (1953) ("If the breach is partial only, the injured party may recover damages for nonperformance only to the time of trial and may not recover damages for anticipated future nonperformance) (quoted in Indiana Michigan, 422 F.3d 1369). To the extent that PPL's claim is based upon damages that it may incur in the future from future failures of DOE to accept its SNF, those damages and those future partial breaches are not at issue in this case.

C. Even If PPL Had Established Some Damage Under Its Theory Of DOE's Obligations, Its Theory Of DOE's Obligations Is Incorrect

In addition to PPL's failure to identify any evidence of damage, PPL's arguments regarding its rights to SNF acceptance are wrong. As we established in our cross-motion, any injury that PPL could incur from delays in SNF acceptance would result from DOE's failure to accept PPL's SNF as identified in PPL's approved delivery commitment schedules ("DCSs"). Def. Br. 36-41; see Pacific Gas and Elec. Co. v. United States, 73 Fed. Cl. 333, 397-400 (2006), appeal pending, No. 07-5046 (Fed. Cir. docketed Jan. 24, 2007). The contract provision defining the contract's

"Scope" expressly states that any SNF to be accepted "shall be specified in a [DCS] as provided in Article V . . . ." 10 C.F.R. § 961.11, Art. II; see PG&E, 73 Fed. Cl. at 350-51. Yet, as previously established, PPL did not submit any DCSs that required DOE to begin SNF acceptance under PPL's Standard Contract. Although PPL seems to complain that the DCS process envisioned by the Standard Contract is meaningless and unenforceable, PPL has failed to identify any other means by which the activities contemplated by the Standard Contract could ever proceed. Under PPL's theory, DOE will magically know when each contract holder wants SNF accepted; each contract holder's desires will magically correspond to the "oldest fuel first" requirements of the Standard Contract; DOE will have no problems simply taking SNF from every contract holder when they want acceptance regardless of space, capacity, staffing, or transportation limitations; and DOE will have no problem with the significant financial repercussions and waste that it will suffer if a contract holder is not prepared to deliver SNF to DOE when DOE arrives at the contract holder's site with the appropriate transportation casks contemplated by the Standard Contract. By reading the DCS process out of the Standard Contract, PPL has eliminated the only mechanism that

would allow the parties to plan for, and commit themselves to, actual performance under the Standard Contract. Without enforcement of the DCS provisions, the Standard Contract cannot work.[4]

Similarly, PPL complains that the Court should ignore the 1995 Acceptance Priority Ranking/Annual Capacity Reports ("APR/ACR"), which identified the SNF allocations that DOE anticipated it would be able to commit itself to satisfying during the first 10 years of SNF acceptance and which did not identify any allocations for PPL in the first 10 years of SNF acceptance, because the allocations there are "contrived." Pl. Reply 14; see 10 C.F.R. § 961.11, Art. IV.B.5 (identifying requirement for issuance of APR and ACR). As an initial matter, PPL's assertion that these allocations are "contrived" is unfounded. The 1995 APR/ACR contains the same acceptance rates as the 1991 ACR and the 1992 ACR, compare Def. App. 411 & 473 with Def. App. 294, and, in fact, contains a higher rate than the

---

[4] PPL suggests that the submission of "a DCS form was not a condition precedent to DOE's obligation to take SNF from Plaintiff under the Standard Contract." Pl. Reply 19. Yet, absent PPL's submission of a DCS and DOE's approval of it, PPL has not identified any practical manner in which activities contemplated under the Standard Contract, including the significant development time necessary for DOE to prepare transportation casks and coordinate their use for SNF acceptance from various contract holders, see 10 C.F.R. § 961.11, Art. IV.B.2, could ever be performed.

"lower bounding case" proposed in the 1990 ACR for use with a Monitored Retrievable Storage ("MRS") facility. Pl. Reply App. 63, 70.

The plaintiff's argument regarding the 1995 APR/ACR is based essentially upon its theory that, once DOE began acceptance and after a short ramp-up period, DOE was contractually obligated to accept 3,000 Metric Tons Uranium ("MTUs") of SNF from contract holders every year. Pl. Reply 14. Yet, it has identified no contract language containing any such requirement. Indeed, this Court has recently rejected the plaintiffs' arguments that the Standard Contract obligated DOE to accept SNF at a 3000 MTU rate, finding instead that the

> use of the acceptance rate and allocations in the 1991 ACR and APR and the amount of spent fuel listed for collection in [a utility's] approved DCSs is the most suitable – and perhaps only – "method of determination independent of a party's mere 'wish, will, and desire' . . . by virtue of the agreement itself [and] by commercial practice or other usage or custom."

Pacific Gas & Electric, 73 Fed. Cl. at 399. Likewise, in response to four SNF plaintiffs' requests that "the contract be reformed to provide an allegedly 'reasonable' post-1998 annual industry-wide acceptance rate of 3,000" MTUs, this court determined that such requests were unfounded:

> Plaintiffs appear to provide no objective basis for

> this reformation, relying instead on equitable principles and a widely-shared impression, among jurists and others, that the agency should be punished for transgressing against public safety. None of the demanded terms is found in the contract; and it is clear that the parties shared no meeting of the minds regarding those terms, as was made clear to all during contract negotiations.

Florida Power & Light Co. v. United States, 64 Fed. Cl. 37, 48 n.12 (2005).

Further, the acceptance rates contained in various planning documents to which PPL cites at page 9 of its reply brief, including the recently issued 2004 APR/ACR, are generally based upon an assumption that an operating repository will be available when SNF acceptance begins. See also Def. Reply App. 22 ("Receipt rates in this table are only applicable if a CISF is approved"). However, as the United States Court of Appeals for the District of Columbia has recognized, DOE was not obligated to have an operating repository available in 1998. Indiana Michigan Power Co. v. Department of Energy, 88 F.3d 1272, 1276, 1277 (D.C. Cir. 1996). Instead, it was obligated only to begin SNF acceptance in 1998 in some type of facility, such as an MRS facility, and the Standard Contract expressly permits DOE to accept SNF for delivery to a facility other than a repository. 10 C.F.R. § 961.11, Art. I(10) (defining "DOE facility"); see 48 Fed. Reg. 16590, 16591 (Apr. 18, 1983) (preamble to final

rule creating Standard Contract terms: "The definition of 'DOE facility' (Article I.10) was expanded to expressly state, in accordance with the Act, that there may be an interim storage facility (or facilities) which DOE may utilize prior to emplacement in a repository"). DOE expressly informed contract holders in early ACRs that, beginning with the 1991 ACR, DOE would issue a firm waste acceptance schedule which would be the basis for the submission of delivery commitment schedules ("DCSs") by the purchasers. Each of the ACRs from 1987 through 1990 contained the following, or substantially similar, language:

> Beginning in 1991, the ACR acceptance ranking will be converted into an Annual Priority Ranking for receipt of SNF/HLW. In 1992, based on this priority ranking, the Purchasers will submit to DOE for approval, Delivery Commitment Schedules identifying the SNF/HLW that Purchasers propose to deliver to the DOE waste management system (WMS). Once approved, these schedules will become the basis for Final Delivery Schedules to be submitted by the Purchasers not less than 12 months before the date of DOE's anticipated acceptance of title to the SNF/HLW and subsequent transport to a DOE facility.

Def. App. 210 (1987 ACR); see Pl. Reply App. 62, 65 (1990 ACR); Def. App. 204 (1985 Mission Plan), 408 (1991 ACR), 38-40; see also Def. App. 209 (1987 ACR: "projections in this initial report are based on current plans

and best available information; they are not contractually binding"). Given that DOE was entitled under the Standard Contract to accept SNF at an MRS facility in 1998, rather than directly at a repository, proposed rates for SNF acceptance at a repository do not somehow become contractually binding obligations upon DOE. See National By-Products, Inc. v. United States, 186 Ct. Cl. 546, 558-59, 405 F.2d 1256, 1263 (1969) ("[b]efore a representation can be contractually binding, it must be in the form of a promise or undertaking . . . and not a mere statement of intention, opinion, or prediction"). Accordingly, PPL cannot base its theory of liability upon DOE's obligation to use higher acceptance rates than those that DOE had proposed to use for SNF acceptance at an MRS.[5]

In any event, PPL never contested or complained about those allocations until it filed this lawsuit in late 2003. Its suggestion that it can wait 12 years after the issuance of those acceptance allocations in 1991

[5] PPL suggests that the Court should use the 2004 ACR that DOE recently published as establishing the mandatory minimum annual acceptance rate to impose into the Standard Contract. Pl. Reply 15. However, the 2004 ACR assumes the existence of a repository in 2010, and the acceptance rates that it contains are based upon that assumption. Pl. Reply App. 111 ("projected nominal acceptance rate is based on the assumption of SNF acceptance beginning in 2010 at the Yucca Mountain Geologic Repository"); Def. Reply App. 12. It certainly is irrelevant to a "mandatory" rate applicable to SNF acceptance at an MRS in 1998.

and then, and only then, complain that the allocations granted were "contrived" and that damages should be based upon some scenario not in existence 12 years earlier. Established precedent of this Court and its predecessor, the Court of Claims, requires the contractor to protest a material breach of contract upon learning of that breach, or else waive the breach. Ling-Temco-Vought, Inc. v. United States, 201 Ct. Cl. 135, 146, 475 F.2d 630, 637 (1973) (quoting Northern Helex Co. v. United States, 197 Ct. Cl. 118, 125-26, 455 F.2d 546, 551 (1972)); see Aleutian Constructors v. United States, 24 Cl. Ct. 372, 384 (1991); Government Sys. Advisors, Inc. v. United States, 21 Cl. Ct. 400, 411, vacated on other grounds, 25 Cl. Ct. 554 (1990). Further, PPL asks this Court to create a legal fiction excusing its failure to take action in response to the 1991, 1992, or 1995 ACRs. To obtain any basis for SNF acceptance in 1998, 1999, or any other year, PPL would have had to have submitted a DCS at least 63 months in advance of the desired SNF acceptance date. 10 C.F.R. § 961.11, Art. V.B.1. Accordingly, for a 1998 acceptance, PPL had to submit a DCS in 1992. PPL, in essence, asks this Court to ignore its failure to protest and its failure to submit any DCSs. PPL fails to explain how it ever could have obtained acceptance rights for specific amounts of

SNF on specific dates without having complied with the contractual requirements. It has identified no basis for forgiving its failure to protest.

D. PPL's Explanations About The Reasons That It Never Submitted A Delivery Commitment Schedule Are Unsupported

PPL further argues that the Court should not tie any liability ruling to the DCS provisions of the Standard Contract because, it says, any attempt to submit a DCS after 1996 would have been futile because, beginning in 1997, DOE refused to approve or disapprove submitted DCSs. Pl. Reply 24. Yet, PPL could have submitted DCSs in every year beginning in 1992 through early 1997, if it had thought that DOE should dispose of its SNF within the first ten years of SNF acceptance. In fact, many other utilities did just that, beginning in 1992, to establish the amount of SNF that DOE would accept within 63 months of submission of the DCS, beginning January 31, 1998. Instead, PPL had no allocations in the first 10 years of SNF acceptance, Def. App. 415, 477, and did not utilize the Standard Contract's disputes resolution process to challenge the lack of allocations. 10 C.F.R. § 961.11, Arts. V.B.1, V.B.2, & XVI.A. PPL's failure to submit a DCS and challenge any denial of that DCS under the contract's "Disputes" provision is fatal to its argument here that the Court should allow it to

recover damages on some basis other than DCSs.[6]

## II. PPL HAS FAILED TO PROFFER THE SUBSTANTIAL EVIDENCE NECESSARY TO SUPPORT ITS GOOD FAITH AND FAIR DEALING CLAIM, MANDATING DISMISSAL OF THAT CLAIM

In response to the Government's motion for summary judgment upon PPL's claim for a breach of good faith and fair dealing, PPL cites to a litany of allegations that allegedly meets the clear and convincing standard and demonstrates that the Government breached the Standard Contract's covenant of good faith and fair dealing. Pl. Reply 29-30. PPL largely points to broad generalizations, such as "DOE's failure to properly implement the DCS process," the "cancellation of the DCS process," the "failure to publish annual APR/ACRs," and "failing to meet the justified expectations of the parties to the Standard Contract" as clear and

[6] To the extent that this Court's decision in Commonwealth Edison Co. v. United States, 56 Fed. Cl. 652 (2003), conflicts with this position, we note that, after considering testimonial and documentary evidence in another case, the Court came to a different conclusion. Specifically, it determined that "the use of the 1991 ACR and APR and approved DCSs (which assume performance through the use of an MRS facility) to determine the acceptance rate defendant would have used had it performed the Standard Contract beginning in 1998 is the most appropriate way to resolve the dispute." PG&E, 73 Fed. Cl. at 399 n.55. Further, in Commonwealth Edison, the plaintiff had actually submitted DCSs to DOE in the 1990s. Here, PPL simply took no action until it filed this lawsuit in 2004.

convincing, or "well-nigh irrefragable proof," that the Government acted in bad faith. Id. In addition, plaintiff also relies upon statements by two Government employees regarding the 1995 ACR and the DCS process. Pl. Reply 31-32.

These assertions provide no substantive evidence of any specific malicious intent by DOE to injure this plaintiff or even the nuclear industry as a whole. As we explained in our cross-motion, the presumption that the Government acts in good faith can only be overcome by "clear and convincing evidence" of bad faith, which "has been equated with evidence of some specific intent to injure the plaintiff." Am-Pro Protective Agency, Inc. v. United States, 281 F.3d 1234, 1240 (Fed. Cir. 2002); see Franklin Sav. Corp. v. United States, 56 Fed. Cl. 720, 743 (2003) ("presumption can be surmounted only with a proffer of 'well nigh irrefragable proof' of the government's bad faith which requires a showing of the government's specific intent to injure or actual malice on the part of the government toward the plaintiff"), aff'd, 97 Fed. Appx. 331 (Fed. Cir. 2004); Asco-Falcon II Shipping Co. v. United States, 32 Fed. Cl. 595, 604 (1994) ("to state a claim premised on a violation of the obligation of good faith and fair dealing, plaintiffs must allege facts which if proved would constitute malice

or an intent to injure"). To establish that the Government's delay in performance was in bad faith, PPL must present "clear and convincing evidence" equivalent to what is necessary to establish that DOE's conduct was "motivated alone by malice," was "designedly oppressive," or was "actuated by animus toward the plaintiff." Am-Pro, 281 F.3d at 1240.

Even the specific testimony pointed to by plaintiff does not meet this criteria. As this court has found looking at some of the same testimony on summary judgment, "[t]his testimony . . . is not clear and convincing evidence of any intent by DOE specifically to harm [plaintiff]. At best, it indicates only an employee's opinion that DOE was attempting to limit its contractual responsibilities and any potential liability." System Fuels Inc. v. United States, 66 Fed. Cl. 722, 735 (2005). Rather than introduce such evidence, PPL has merely asserted in its brief, through statements of counsel, that the Government's delays should be viewed as constituting malicious intent. As previously discussed, to refute the Government's summary judgment motion, PPL was required to provide, at a minimum, evidence through declaration detailing facts establishing the intent of the Government to injure PPL. See Barmag Barmer, 731 F.2d at 836. "Argument and assertion of counsel cannot substitute for factual